UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANDREW ROBINSON | CIVIL ACTION NO. 03-1623-P |
| versus | JUDGE WALTER |
| WARDEN, ET AL. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Andrew Robinson ("Petitioner") of the second degree murder of Mario Bradford. After pursuing a direct appeal and a post-conviction application, Petitioner filed this action seeking federal habeas relief. It is recommended, for the reasons that follow, that the petition be denied.

**Background Facts**

On the night of the shooting, Mario (the victim), his father and three other persons were listening to music and smoking marijuana in Mario's father's apartment on Egan Street in Shreveport. Someone knocked on the door and said his name was Andre, but no one in the apartment knew anyone by that name. One of the men, Kevin Mims, told the others not to open the door; he asked Mario's father to get a gun. The group in the apartment then heard someone stumble down the stairs outside the apartment and, seconds later, two gunshots were fired through a window into the apartment. Everyone ducked. Kevin took a gun and went downstairs to investigate.

Kevin saw Petitioner walking down the driveway holding a black revolver to Mario's head. Mario's pants were pulled down to his knees, and he was having difficulty walking. No one in the apartment had seen Mario leave through the only door, so Kevin concluded that Mario must have exited through a window. A later search found an open bathroom window next to a drain pipe that led to the ground.

Kevin's car was between him and Petitioner, who was holding Mario with the gun to his head. Petitioner told Kevin to drop his gun because "I got your boy." Kevin ducked down, heard a gunshot, and saw a muzzle flash through the back window of the car. Petitioner then ran around the car toward Kevin with his gun pointed at him. The two men exchanged fire. Kevin was not hit. Petitioner fled up the driveway. Kevin found Mario lying on the ground with a gunshot wound to the head.

Larry Mitchell, another of the men in the apartment, stayed inside during the shooting but heard Mario screaming, "He got me." After Larry heard the gunshots outside, he began shooting in the direction of the driveway.

Petitioner went to the hospital to seek treatment for gunshot wounds to his shoulder and each hand. Police located him there and eventually put together a case against Petitioner.

A man who lived near the crime scene reported seeing a car speed from the scene near the time of the shooting. The police showed him Petitioner's car. He said he had no doubt that it was the car he had seen.

Testimony from the coroner and a firearms expert showed that Mario's fatal wound was fired from a .357 magnum Smith & Wesson revolver. Powder stippling indicated that the gun was a mere six to eighteen inches from the victim's head when it was fired. The revolver was found by police lying on the ground near the crime scene. Larry's .38 caliber Taurus revolver was found inside the apartment with all six rounds fired.

A forensic DNA analyst testified that she tested blood stains found on the .357 revolver, Kevin's car (next to which the shooting happened), and a sweatshirt worn by Petitioner. Tests showed that all of the blood came from Petitioner. Mario's blood was tested and excluded as being the source of the samples. A crime scene investigator testified that she recovered a black baseball cap with the letter D on the front of it from the ground near the front of the car at the crime scene. Witnesses told her the cap belonged to Petitioner.

**Ineffective Assistance of Counsel: Conflict of Interest**

   **A. Pretrial Disclosure**

Pamela Smart, an attorney with the Caddo Parish Indigent Defender Office, was assigned to represent Petitioner. Several months before trial, Ms. Smart filed a motion for her and her office to be relieved of the appointment because (1) Ms. Smart previously represented Mario Bradford (the victim) on a charge of simple burglary of an inhabited dwelling, to which he pleaded guilty, and (2) a potential prosecution witness was a close friend of an employee of the Indigent Defender Office. Tr. 13-14. At a hearing on the motion, Ms. Smart said that she had checked to see if the employee's friend was actually a

witness, but she did not know yet whether the friend was interviewed by the police or would be called as a witness. (There is no indication that the person was called at trial.) The judge found that the possibility the friend would testify was insufficient to relieve Ms. Smart of the appointment. As for the prior representation of the victim, the judge stated:

> "The other basis could have been a possible conflict. However, your former client is now deceased; and, therefore, any attorney/client privilege has now been disposed of. I think that basis now would not be a proper basis, so I am going to deny the Motion to be relieved."

Tr. 175-77. Petitioner did not object to Ms. Smart's continued representation at any point during the trial proceedings, and the issue was not raised on direct appeal.

### B. Post-conviction Application

The conflict issue did not surface again until Petitioner filed an application for post-conviction relief. He argued, as he does in his federal petition, that the trial judge should have relieved Ms. Smart of the appointment because of her prior representation of the victim. Petitioner made general allegations that prejudice could have resulted. He also claimed that counsel "did not put up an iota of a defense" and "could have" made an issue of the victim's character. He claims that the prior attorney/client relationship kept her from doing so. Tr. 967.

The district court denied the application on the grounds that it was procedurally barred under La. C. Cr. P. art. 930.4(C) because it alleged a claim that was raised in the trial court and inexcusably not pursued on appeal. Tr. 1023. Louisiana law does permit an ineffective assistance claim to be raised on direct appeal if the record contains sufficient evidence to rule

on the merits of the claim, but Louisiana courts usually direct that the claim be addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be held. See, e.g., State v. Wise, 916 So.2d 290, 293 (La. App. 5th Cir. 2005). That rule casts doubt on the correctness of the trial court's ruling. The Court of Appeal, likely cognizant of the general rule, did not rely on the procedural defense. Rather, it held: "On the showing made, we find that applicant has not met his burden of proof to show relief should be granted." Tr. 1052. The Supreme Court of Louisiana denied writs without comment. Tr. 1071. As explained below, the adjudication of the claim on the merits rather than a procedural grounds affects how this court reviews the claim.

**C. AEDPA Deference is Due**

Habeas relief shall not be granted with respect to any claim that was "adjudicated on the merits in State court proceedings" unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). When this statute applies, the federal court affords the state court's decision a significant degree of deference. Williams v. Taylor, 120 S.Ct. 1495 (2000).

That level of deference is owed even when the state court denied relief without a written opinion. The federal court will assume that the state court applied the proper Supreme Court precedent and determine whether the state court's decision was contrary to,

or an objectively unreasonable application of, that precedent. Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003). The last reasoned state court decision, rendered by the Court of Appeal, was directed at the merits rather than at any procedural defense, so deference is owed under Section 2254(d). See Salazar v. Dretke, 419 F.3d 384, 394-95 (5th Cir. 2005) (distinguishing adjudications on the merits from procedural dispositions).

**D. Clearly Established Federal Law**

Attorney conflicts based upon the representation of multiple or serial clients should be judged under Cuyler v. Sullivan, 100 S.Ct. 1708 (1980). Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir. 1995)(en banc). In contrast, Strickland v. Washington should be used to address ineffective assistance claims based on conflicts outside of the multiple or serial client context. Beets, supra.

Cuyler states: "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 100 S.Ct. at 1719. An "actual conflict" exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000).

The second element of Petitioner's claim, an adverse effect, is not present if the conflict "did not harm his lawyer's advocacy." Burger v. Kemp, 107 S.Ct. 3114, 3121 (1987). An adverse effect may be established with evidence that some plausible alternative

defense strategy or tactic could have been pursued, but it was not because of an actual conflict that impaired counsel's performance. Perillo, 205 F.3d at 781. Of course, this court's review of the issue is limited to whether the state court's decision was so wrong as to be an unreasonable application of the Cuyler principles.

**E. Analysis**

The Fifth Circuit has recognized that past representation of members of a victim's family does not preclude an attorney from representing the defendant if the attorney reveals his relationship to the defendant and the court. Kirkpatrick v. Butler, 870 F.2d 276, 284 (5th Cir. 1989). The Court added that one can envision circumstances in which such representation "may be highly desirable." See also Crisp v. Duckworth, 743 F.2d. 580, 588 (7th Cir. 1984) (no conflict where counsel represented murder victim in unrelated criminal action and informed defendant of the prior representation); Strouse v. Leonardo, 928 F.2d 548, 553 (2d Cir. 1991) (no conflict where counsel represented murder victim, the defendant's mother, in unrelated civil matters); and Pratt v. Upstate Correctional Facility, 413 F.Supp.2d 228, 247 (W.D. N.Y. 2006) (prior representation of the victim's father did not create a per se conflict). Counsel's prior representation of the victim was disclosed to Petitioner, and he voiced no objection until after he was convicted.

Petitioner has not pointed to any specific evidence that shows his counsel did not pursue a strategy because of alleged loyalty to her former, deceased client. Petitioner suggests that counsel should have presented a self-defense theory that attacked the character of the victim because it "is possible that defense counsel knew valuable information about

the victim" that could have supported the defense. Petitioner suggests that such information included that the victim was a gang member who frequently robbed and shot at people in the neighborhood.

The record shows that counsel did not hold back in pointing out that the home where the victim was located just before the shooting was a place where drugs were sold and that all of the persons present that night were using drugs. She also argued that there was no specific evidence of what happened between Petitioner and the victim before Mr. Mims came outside with his gun and saw Petitioner leading the victim away with a gun to his head. Counsel also discussed each principal piece of evidence and attempted to highlight questions about that evidence in order to give rise to reasonable doubt. The defense conceded that Petitioner shot the victim, but the defense strategy was to avoid a second degree murder conviction and obtain (if not an acquittal) a lesser manslaughter conviction.

Petitioner has not presented sufficient facts to carry his burden of showing that the state courts were not merely wrong but objectively unreasonable in their decision of this issue. He has not, despite several opportunities in the state and federal court, articulated specific facts that show how counsel compromised her duty of loyalty or zealous advocacy by choosing to favor a competing interest in favor of the victim. She certainly was not concerned about protecting the deceased from possible criminal charges or other repercussions.

Even assuming a conflict, there is no showing of an adverse effect. Petitioner has not established that a self-defense strategy was not pursued because of counsel's loyalty to her

former, deceased client. Petitioner also has not explained how the strategy would have been executed within the framework of the evidence against him, and there is no reason to believe that his attorney, who mounted an aggressive defense given the facts she had to work with, would not have pursued such a strategy if she had believed it was viable. The state court's decision on this issue was not objectively unreasonable, so relief is not warranted.

**The Indictment**

A grand jury indicted Petitioner for first degree murder. Tr. 7. The District Attorney later issued an amended indictment for a lesser charge of second degree murder, but without bringing the amended indictment before the grand jury. Tr. 6. Defendant argued on direct appeal that this procedure violated Louisiana law. The Court of Appeal rejected the claim on the merits. Tr. 864. Petitioner now urges the issue as grounds for federal habeas relief.

The grand jury requirement is applicable to federal prosecutions, but the Supreme Court has held that it is not binding on the states. Campbell v. Louisiana, 118 S.Ct. 1419, 1423 (1998); Hurtado v. California, 4 S.Ct. 111 (1884). See also Freeman v. City of Dallas, 242 F.3d 642, n. 5 (5th Cir. 2001). Thus, habeas relief is not available based on an argument that a charge was instituted by the District Attorney rather than the grand jury.

Lower courts have also rejected habeas claims based on the sufficiency of a state indictment or bill of information on the rationale that the claims are not a matter for federal habeas corpus relief unless it is shown that the charging instrument "is so defective that the convicting court had no jurisdiction." Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988); Dowell v. C.M. Lensing, 805 F.Supp. 1335, 1342-43 (M.D. La. 1992). For a charging

instrument to be fatally defective, no circumstances can exist under which a valid conviction could result from facts provable under the instrument. State law is the reference for determining sufficiency and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." Morlett, supra. See also McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994). Petitioner presented his claim to all levels of the Louisiana courts, and they deemed the charging instrument to be valid under state law. Petitioner is not entitled to habeas relief on this issue.

**Jury Instruction**

    **A. State Court Proceedings**

Petitioner argued on appeal that the trial court erred in instructing the jury regarding general criminal intent. Judge Bryson instructed the jury, in accordance with La. R.S. 14:30.1, that second degree murder was the killing of a human being when (1) the offender has a specific intent to kill or to inflict great bodily harm or (2) when the offender is engaged in the perpetration or attempted perpetration of certain felonies, including second degree kidnapping, even though the offender has no intent to kill or to inflict great bodily harm. Tr. 769.

Judge Bryson later gave a separate instruction on the meaning of criminal intent. The language was taken verbatim from La. R.S. 14:10. He first instructed that specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Tr. 772-73. He then instructed: "General criminal intent is present whenever there is specific

intent and also when the circumstances indicate that the offender in the ordinary course of human experience must have a[d]verted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." Tr. 773. The judge went on to instruct that intent was a question of fact and need not be proven by direct evidence but could be inferred from the circumstances of the case. Id.

Petitioner argued on appeal that the instructions, when viewed collectively, could be interpreted to mean that specific and general intent always coexist, thus allowing the jurors to believe that specific intent could be inferred from a finding of general intent. The appellate court first rejected the argument because Petitioner did not request special jury instructions or make a contemporaneous objection at trial. The Court of Appeal nonetheless addressed the claim and found it to be without merit. The Court found that the statute read to the jury was clear and did not imply that specific intent and general intent always coexist. Tr. 865-66.

**B. Procedural Bar**

A state court's decision based on procedural grounds effects a procedural bar to federal habeas relief even if the state court alternatively reaches the merits of a defendant's claim. Harris v. Reed, 109 S.Ct. 1038, n. 10 (1989); Fisher v. State of Texas, 169 F.3d 295, 300 (5th Cir. 1999). Louisiana Code of Criminal Procedure 801, cited by the Court of Appeal, requires timely objections to jury instructions. The statute has been recognized as an independent and adequate state procedural bar. Duncan v. Cain, 278 F.3d 537, 541-43 (5th Cir. 2002). The state raised the bar defense in its answer, thus obligating Petitioner to

establish cause and prejudice to allow federal relief. Petitioner did not file anything, so the issue is procedurally barred.

**C. The Merits**

If the merits are reached, the claim also fails. A jury instruction is unconstitutional if it relieves the state of its Fourteenth Amendment burden of proving every element of a criminal offense beyond a reasonable doubt. In <u>Sandstrom v. Montana</u>, 99 S.Ct. 2450 (1979), an instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" was held unconstitutional in a prosecution that required proof that the defendant purposefully or knowingly caused the death of the victim. The instruction was susceptible of being interpreted by a reasonable jury as conclusive or, alternatively, requiring a finding of intent upon proof of the defendant's voluntary actions unless the defendant proved the contrary, thus shifting the burden of persuasion on the element of intent. 99 S.Ct. at 2456. Both interpretations were held to be unconstitutional. <u>Id</u>. at 2459.

Nothing in the charge given in this case created a presumption or otherwise shifted the burden to Petitioner on the issue of intent. It would not be a reasonable interpretation of the clear instructions to conclude that specific intent is present whenever there is general intent. <u>Sandstrom</u> assessed the issue from the standpoint of how a "reasonable jury" could have interpreted the instruction. <u>See</u> <u>also</u> <u>Cage v. Louisiana</u>, 111 S.Ct. 328, 329 (2000) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole.") Only an unreasonable juror would interpret the instruction in the

fashion suggested by Petitioner. The state court's resolution of this issue was not objectively unreasonable, so relief is not warranted on this final claim.

Even when a <u>Sandstrom</u> error has been committed, habeas relief is not warranted unless the erroneous instruction had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Robertson v. Cain</u>, 324 F.3d 297 (5th Cir. 2003). This is not a close case where there was any considerable *evidence* indicating that Petitioner lacked the requisite intent to kill or commit great bodily harm when he pulled the trigger, despite defense *arguments* to the contrary. In addition to the testimony about the gunfight that was summarized above, the prosecutor also supported his specific intent element by asking the jurors to pull the heavy trigger on the murder weapon. He suggested that anyone who pulled that heavy trigger did so with intent to kill. Tr. 741-42. Furthermore, the prosecution did not make any argument that it was entitled to a presumption of intent or that Petitioner had the burden on that issue in any respect.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED,** and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 11th day of April, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE